482 A.2d 1117

GASLIN, INC., and Lorraine Cairo

v.

L.G.C. EXPORTS, INC., and Jorge Figueroa and Blimpie
Industries, Ltd., or Successor to Same.

**Appeal of Jorge FIGUEROA.**

Superior Court of Pennsylvania.

Argued March 7, 1984.

Filed Oct. 12, 1984.

134

Edwin B. Barnett, Philadelphia, for appellant.

John J. Hagarty, Philadelphia, for appellees.

Before ROWLEY, MONTEMURO and JOHNSON, JJ.

ROWLEY, Judge:

Jorge Figueroa appeals from the Judgment entered pursuant to the trial court's order of June 4, 1982, granting

appellee's motion to confirm an arbitration award entered against L.G.C. Exports, Inc. (L.G.C. Exports), Jorge Figueroa and Blimpie Industries, Ltd. (Blimpie), in the amount of $35,177.50. After a thorough review of the record herein, we vacate the judgment and the trial court's order as to appellant.[1]

By written contract dated October 22, 1979, Lorraine Cairo and Gaslin, Inc., licensees-appellees, purchased an exclusive license to operate a Blimpie Sandwich Restaurant from L.G.C. Exports, licensor. Lorraine Cairo, appellee, signed the franchise agreement on behalf of Gaslin, Inc., and Jorge Figueroa, appellant, signed it on behalf of L.G.C. Exports. The agreement contains the following arbitration clause:

20. ARBITRATION:

In the event LICENSEE has a disagreement with LICENSOR relating to the interpretation of their Licensing Agreement or relating to any conflict between the LICENSEE and LICENSOR, they both agree to submit the dispute to arbitration in accordance with the least expensive procedure of the American Arbitration Association in Philadelphia prior to the initiation of any legal proceeding whatsoever. Notwithstanding the foregoing LICENSEE agrees to continue payment without cessation of all 6% of gross sales due and owing LICENSOR or LICENSOR'S designated independent and unaffiliated leasing corporation, and continue to operate their Blimpie Base restaurant in accordance with the approved product line and operational manual indicated herein.

Eventually, a dispute involving the franchise agreement arose and Cairo demanded arbitration pursuant to the above-cited arbitration clause, naming as respondents, L.G.C. Exports, Blimpie, and Figueroa. In his Answer to Cairo's demand for arbitration, filed with the American Arbitration Association (Arbitration Association), Figueroa objected to the jurisdiction of the Arbitration Association as

---

1. The other named defendants have not appealed and the judgment and order are not disturbed as to them.

to him, alleging that he, individually, was not a party to the franchise agreement dated October 22, 1979, and that he did not consent to arbitration. Following a hearing before an arbitrator,[2] an award was entered in favor of Cairo and against L.G.C. Exports, Figueroa and Blimpie, jointly and severally, in the amount of $35,177.50. On January 8, 1982, Cairo filed a Motion to confirm the arbitrator's award in the Court of Common Pleas pursuant to 42 Pa.C.S.A. § 7313 (Uniform Arbitration Act, Act of October 5, 1980, P.L. 693, No. 142). Figueroa filed an Answer to Cairo's Motion to Confirm the Arbitrator's Award wherein he again asserted that he was not a party to the arbitration agreement and that the Arbitration Association did not have jurisdiction to decide the dispute as to him, individually. Following argument and consideration of the parties' briefs, appellee's motion to confirm the award was granted by the trial court and judgment was entered on the arbitrator's award.

On appeal, Figueroa's first contention is that the arbitration was governed by common-law principles and, thus, the trial court erred in applying the provisions of the Uniform Arbitration Act of 1980 to this dispute. We agree.

■ Prior to 1980, statutory arbitration in Pennsylvania was governed by the Arbitration Act of 1927 (1927 Act).[3] In October of 1980, the Pennsylvania Legislature adopted the Uniform Arbitration Act (1980 Act)[4] which displaced the 1927 Act. In its opinion, the trial court determined that the provisions of the 1980 Act were dispositive of the issues involved in the instant case. The trial court further held that appellant, Figueroa, had waived any defenses to the arbitrator's award by failing to follow the procedures for contesting the award outlined in the 1980 Act. Therefore, the trial court never reached the merits of appellant's challenge to the arbitrator's jurisdiction. We note, how-

2. The arbitrator was appointed pursuant to the rules and regulations of the Arbitration Association. Although Figueroa received notice of the date of the hearing before the arbitrator by mail, he did not appear.

3. Act of April 25, 1927, P.L. 381, No. 248, as amended, 5 P.S. §§ 161–181.

4. Act of October 5, 1980, P.L. 693, No. 142, § 501(a); effective in 60 days, 42 Pa.C.S.A. § 7301–7320.

ever, that the franchise agreement that contained the arbitration clause was executed on October 22, 1979, almost one year *before* the 1980 Act was adopted by the Pennsylvania Legislature. Therefore, even if the language of the arbitration clause herein *could* be construed as providing for statutory arbitration, the governing statute would necessarily be the Arbitration Act of 1927, the statute in effect when the parties signed the agreement. Our examination of the arbitration clause in this case reveals, however, that it provided for arbitration in accordance with the common law, and not pursuant to any statute.

In determining whether an arbitration proceeding is governed by common-law principles or by the provisions of the 1927 Act, our courts have examined the language of the contractual arbitration provision and the procedures followed by the parties during arbitration.[5] *Wingate Construction Co. v. Schweizer Dipple, Inc.*, 419 Pa. 74, 213 A.2d 275 (1965). The 1927 Act has been applied only if the parties expressly or impliedly provided for it in their agreement, and the Act's procedures were followed. *Runewicz v. Keystone Insurance Co.*, 476 Pa. 456, 383 A.2d 189 (1978). *See Gentile Building Contracting v. Weiss*, 328 Pa.Super. 475, 477 A.2d 544 (1984). If the contractual arbitration provision does not designate whether the 1927 Act or common-law principles apply, and there is no evidence that the parties subsequently agreed, either expressly or impliedly, to follow the Act's provisions, the common-law rules are controlling. *Runewicz v. Keystone Insurance Co., supra; J.A. Robbins Co., Inc. v. Airportels, Inc.*, 418 Pa. 257, 210 A.2d 896 (1965). Applying this standard, it is clear that the arbitration in the instant case was not governed by statute.

The franchise agreement did not expressly provide for arbitration pursuant to the 1927 Act. Rather, the agreement provided for arbitration of disputes "in accordance with the least expensive procedure of the American Arbitra-

---

5. There is no provision in the 1927 Act that addresses what specific language must be included in an agreement to arbitrate in order for the arbitration to be governed by the provisions of the 1927 Act.

tion Association". There is no precedent suggesting that the inclusion of such language in an arbitration provision evidences an implicit reference to the 1927 Act. On the contrary, in *Campbell-Ellsworth, Inc. v. Holy Trinity*, 233 Pa.Super. 126, 336 A.2d 346 (1975), a clause which required that any disputes be resolved by arbitration "in accordance with the Construction Industry Rules of the American Arbitration Association" led to arbitration at common law since the agreement was deemed to be silent with respect to the applicable law. *Id.*, 233 Pa.Superior Ct. at 130, 336 A.2d at 347. *See Runewicz v. Keystone Insurance Co., supra* (where agreement did not expressly provide for arbitration pursuant to 1927 Act, but instead, provided for arbitration under the rules of the American Arbitration Association, the arbitration was at common law). *See also, Wingate Construction Co. v. Schweizer Dipple, Inc., supra; Napet, Inc. v. John Benkart & Sons, Co.*, 288 Pa.Super. 187, 431 A.2d 351 (1981).

Thus, the agreement in this case did not *expressly* or *implicitly* provide for statutory arbitration. In addition, the parties did not *subsequently* agree, expressly or impliedly, to follow the provisions of the 1927 Act. Cairo filed a "Motion to Conform Arbitrator's Award and for Entry of Judgment in Conformity therewith Pursuant to 42 Pa.C.S.A. Sec. 7313." This motion suggests that Cairo believed that the procedures laid out in the 1980 Act were applicable. The Caption of Figueroa's Answer to Cairo's Motion stated that it was filed pursuant to 42 Pa.C.S.A. § 7313. Thus, it is clear that neither party *impliedly* agreed to apply the 1927 Act. It is likewise clear that a mere reference to the 1980 Act in the parties' pleadings does not justify applying the provisions of the 1980 Act. The 1980 Act does not provide that a party may impliedly agree to follow its provisions, rather, it requires an express written agreement to arbitrate pursuant to that statute. 42 Pa.C.S.A. § 7302.[6]

6. Even if an implicit agreement were sufficient to justify applying the 1980 Act, we would find that no such agreement was made in this case. The language in the pleadings is the only evidence of an intention to apply statutory rules to the arbitration. Figueroa merely "borrowed" language from Cairo's motion to

There was no express written agreement to arbitrate in accordance with the 1980 Act in this case.

We hold, therefore, that arbitration of the dispute in this case was governed by common-law principles; hence, Figueroa was not required to follow the proscriptions of the 1927 or 1980 Acts. Accordingly, the trial court committed an error of law in determining that Figueroa had waived his right to challenge the arbitrator's award by failing to follow the procedures set forth in the 1980 Act.

Appellant-Figueroa's main contention, argued before the trial court and asserted on this appeal, is that he was not a party to the franchise agreement executed by Cairo and L.G.C. Exports and, thus, he did not consent to arbitration. Appellant argues that the arbitrator had no power or authority to enter an award against him and the trial court erred in refusing to set aside that award as to him.

In common-law arbitration proceedings, the arbitrator is the final judge of law and fact and we may not review an award for an alleged error on that basis. *Runewicz v. Keystone Insurance Co., supra.* It is well settled, however, that voluntary arbitration is a matter of contract, and absent an agreement between the parties to arbitrate their disputes, they cannot be compelled to arbitrate. *Hoffman v. Gekoski*, 250 Pa.Super. 49, 53, 378 A.2d 447, 448 (1977). Whether *an agreement to arbitrate was entered into* and whether the dispute falls within the scope of an arbitration provision have traditionally been questions for the court to determine. *Flightways Corp. v. Keystone Helicopter Corp.*, 459 Pa. 660, 331 A.2d 184 (1975); *Mack Manufacturing Co. v. International Union, et al.*, 368 Pa. 37, 81 A.2d 562 (1951). Therefore, although the arbitrator is the final judge of law and fact, his power has not been extended to the degree that he may determine his own jurisdiction, that

confirm the award in order to formulate his answer to that motion. Indeed, Figueroa's only purpose in answering was to continue objecting to the arbitrator's authority to hear the dispute in the first instance. His answer was not an acquiescence that the arbitration was legitimate nor was it an acknowledgment that the arbitration was controlled by statute. *See e.g., Harwitz v. Selas Corp. of America*, 406 Pa. at 543, 178 A.2d at 619. *Cf. Hart v. State Farm Auto Ins. Co.*, 288 Pa.Super. 53, 431 A.2d 283 (1981).

is, whether the arbitration tribunal has the requisite power to hear the particular case brought before it. Whether a party consented to arbitrate a dispute in the first instance is a jurisdictional question that must be decided by a court. Thus, Figueroa is correct in his claim that it was within the province of the trial court to pass upon the question whether he was a party to the franchise agreement executed by Cairo and L.G.C. Exports and, thereby, bound to arbitrate disputes pursuant to the arbitration clause contained in that agreement.

■ Appellee argues that appellant waived his challenge to the arbitrator's jurisdiction by failing to seek to enjoin the arbitration proceeding when he first received notice of Cairo's demand for arbitration. Appellee cites *Hoffman v. Gekoski, supra,* as support for this contention. We find appellee's argument to be without merit.

In *Hoffman v. Gekoski, supra,* Norman Paul, of Paul Master Build Inc., and Albert Gekoski entered into an agreement for the construction of Gekoski's house. Paul subsequently brought in Waverly Manor Corporation as a co-venturer. When Gekoski became dissatisfied with the poor quality of the work on his house, Victor Hoffman, the president and sole shareholder of Waverly Manor Corporation, agreed that he would personally take over supervision of the job. Gekoski eventually brought in another contractor to complete the work. Pursuant to an arbitration clause in the original contract, Gekoski filed a claim to recover additional costs incurred against Paul and Waverly Corporation. In addition, Gekoski filed a claim against Victor Hoffman, individually. Hoffman objected to the arbitrator's jurisdiction on the ground that he never agreed to submit the question of his personal obligation to arbitration. The arbitration hearing commenced, but it could not be concluded in one day and it was rescheduled. In the meantime, Hoffman filed a complaint in equity requesting the trial court to permanently enjoin the arbitration proceedings as to him. The trial court determined that Hoffman was not individually bound by the agreement to arbitrate and,

therefore, the injunction was granted. In affirming the trial court's order granting the injunction, this Court stated:

> When one party seeks to enjoin another from proceeding to arbitration, judicial inquiry is limited to the question of whether the parties agreed to arbitrate. *Allentown Supply Corp. v. Hamburg Mun. Auth.*, 463 Pa. 167, 344 A.2d 477 (1975); *Independence Development Inc. v. American Arbitration Ass'n*, 460 Pa. 390, 333 A.2d 781 (1975). A party who can establish that he did not agree to arbitrate may be entitled to enjoin an arbitration an arbitration proceeding which seeks to bind him by its ruling. *Flightways Corp. v. Keystone Helicopter Corp.*, 459 Pa. 660, 331 A.2d 184 (1975).

250 Pa.Super. at 53, 378 A.2d at 448. Clearly, *Hoffman* held that one who asserts that he is not a party to an agreement to arbitrate is justified in attempting to enjoin the arbitration proceeding. However, *Hoffman* does not hold that filing a complaint for a preliminary injunction is the *exclusive* method whereby a party may attack the arbitrator's jurisdiction.

We are aware of no case where a person waived his right to claim that he was not a party to an arbitration agreement because he did not proceed to enjoin the arbitration before an award was entered.[7] Although petitioning the trial court

---

7. We note that our Court, in *White v. Concord Mutual Insurance Co.*, 296 Pa.Super. 171, 442 A.2d 713 (1982) stated that a party who "proceeds to arbitration without objecting that the matter at issue is outside the arbitration agreement waives that objection." *Id.*, 296 Pa.Superior Ct. at 179, 442 A.2d at 717. However, the appeal in *White* was from an order denying a petition for the appointment of an arbitrator; thus, the parties in *White* had not proceeded to arbitration. The above-cited language was included only to point out a distinction between the procedure followed in *White* and the procedure followed in the case of *Runewicz v. Keystone Insurance Co.*, supra, wherein the defendant proceeded to arbitration, and later argued unsuccessfully that the award was an "irregularity" that led to an unjust, inequitable or unconscionable result. Therefore, neither *White* or *Runewicz* dealt with a challenge to the arbitrator's jurisdiction and these cases are not applicable to the instant controversy. Moreover, the instant case is distinguishable since Figueroa objected to the arbitrator's jurisdiction at every stage of the proceeding.

More recently, in *Brennan v. General Accident Fire and Life Assurance Corp.*, 307 Pa.Super. 288, 453 A.2d 356 (1982), our Court stated:
If a party proceeds to common law arbitration without first asking a court to find that the matter at issue is not within the scope of the arbitration agree-

to enjoin the arbitration might have been the preferred procedure in this case, we are not persuaded that Figueroa waived his right to object to the arbitrator's jurisdiction by failing to seek a permanent injunction. Indeed, our court *has* reviewed challenges to an arbitrator's jurisdiction, raised for the first time at the appellate stage, after the entry of an award.

In *Britex Waste Co. v. Schwab & Sons, Inc.*, 139 Pa.Super. 474, 12 A.2d 473 (1940), the plaintiffs brought suit in the trial court based upon an award of arbitrators directing defendants to pay for goods pursuant to a written contract between the parties. The defendant filed an affidavit of defense, and the trial court discharged the plaintiff's rule for judgment on the ground that defendant's affidavit presented a factual issue. On appeal, our Court held that the trial court erred in discharging the plaintiff's rule for judgment on the basis of a factual dispute since questions that are the subject of an arbitrable dispute may not be retried in an action brought upon the award. *Id.*, 139 Pa.Superior Ct. at 480, 12 A.2d at 476. The court determined that the *only* matter open to attack by a defendant *after* an arbitrator's award is entered is the jurisdiction of the arbitrators. Therefore, the court proceeded to review only defendant's contentions that the arbitration tribunal did not have jurisdiction to determine the parties' disputes because conditions precedent to arbitration were not satisfied and because the defendant revoked the agreement.

ment, the party may not later seek to have the court vacate an adverse award on the ground that the arbitrators incorrectly determined that the matter was within the scope of the agreement.

*Id.,* 307 Pa.Superior Ct. at 291, 453 A.2d at 357. (citing *White v. Concord Mutual Insurance Co., supra* ). The issue in *Brennan* was whether an order directing arbitration at common law was an appealable order. The above-cited passage was not dispositive of the issue involved since the parties had not yet proceeded to arbitration, rather, the passage was included as part of the court's description of the standard of review on appeal from a common-law arbitration award. Consequently, this language was *dicta* in *Brennan* and it is not controlling in the instant case, especially in light of our Court's more recent opinion in *Hassler v. Columbia Gas Transmission Corp.*, 318 Pa.Super. 302, 464 A.2d 1354 (1983).

*Hassler v. Columbia Gas Transmission Corp.*, 318 Pa. Super. 302, 464 A.2d 1354 (1983), involved an agreement whereby Columbia Gas purchased a right-of-way over land owned by the Hasslers. The right-of-way agreement provided that Columbia would pay any damages arising to "crops and fences" from Columbia's operations on the Hasslers' land. The Hasslers brought suit against Columbia Gas seeking damages for *inter alia,* destruction of crops and fences and stampeding of cattle resulting from a ten-inch pipe that had been laid on the Hasslers' land. The matter was referred to arbitration pursuant to an arbitration clause in the right-of-way agreement and, subsequently, the arbitrators recommended a $15,765.78 award in favor of the Hasslers which included compensation for the loss of trees and a cow. Columbia's petition to vacate the award regarding the trees and cow was denied, and the award was confirmed by the court *en banc.* Columbia then appealed to this Court arguing for the first time, that the arbitrators had exceeded their jurisdiction in awarding damages for trees and a cow because the arbitration clause provided for arbitration of disputes concerning only damages to crops and fences.

Our Court properly observed that the question of the arbitrator's jurisdiction—that is, whether the dispute was within the terms of the arbitration agreement—was for the court to determine. Therefore, our Court reviewed Columbia's jurisdictional challenge, even though Columbia had not sought to enjoin the arbitration proceeding prior to the entry of an award, and had not objected to the arbitrator's jurisdiction prior to the appellate stage.

 In the instant case, Figueroa continually objected to the arbitrator's power to hear the dispute regarding his alleged personal liability under the franchise agreement. Figueroa objected to the Arbitration Association's jurisdiction in both his answer to appellee's demand for arbitration and in his answer to appellee's motion to confirm the arbitrator's award. Figueroa appealed the trial court's order granting appellee's motion to confirm the award,

again asserting that he was not a party to the franchise agreement and that he never consented to arbitration. Under these circumstances, the question whether the parties entered into an agreement to arbitrate was a proper question for *judicial* inquiry. Figueroa did not waive his right to raise this question by failing to seek to enjoin the arbitration proceedings; indeed, jurisdiction was the only matter open to attack by him after the arbitrator's award was entered.[8] Thus, we find that the issue regarding the arbitrator's jurisdiction was properly before the trial court since it had been raised in Figueroa's answer to Cairo's motion to confirm the award.

■ Nonetheless, the trial court held that appellant had waived his defenses to the arbitrator's award by failing to follow the procedures proscribed by the 1980 Act, and consequently, the court did not review the merits of appellant's claim. On the record before us, it would be impossible for us to determine whether Figueroa signed the franchise agreement as a representative for L.G.C. Exports or in his individual capacity. Although the contract, on its face, suggests that Figueroa signed the agreement as an agent for L.G.C. Exports, it is not conclusive on that point. The question whether Figueroa is personally bound by the franchise agreement and, thus, bound to arbitrate disputes arising under that agreement is a question of fact that must be decided by the trial court following an evidentiary hearing.

Accordingly, we reverse the judgment and vacate the trial court's order confirming the arbitrator's award as to Figueroa. The case is remanded for further proceedings before the trial court. Jurisdiction is relinquished.

8. As previously stated, a common-law arbitration award may not be reviewed on the basis of an error of law or fact. "The setting aside of an award is proper only on a showing of denial of a hearing or fraud, misconduct, corruption, or similar irregularity leading to an unjust, inequitable, or unconscionable award." *Runewicz v. Keystone Insurance Co.*, 476 Pa. at 461, 383 A.2d at 191–192. In the instant case, however, the central inquiry is not whether the award was just, but whether Figueroa was bound to arbitrate this dispute in the first place. If Figueroa was not a party to the franchise agreement that contained the arbitration provision, then he did not consent to arbitrate this dispute and the award against him was improper.